# CHARLESTON.

MARION FRENCH *et als. v.* POCAHONTAS COAL & COKE Co. *et als.*

Submitted October 5, 1920.   Decided October 12, 1920.

1. INFANTS—*Statutory Sale of Infant's Realty Must Comply with Jurisdictional Requirements.*

    To effectuate a regular and unimpeachable sale of the real estate of an infant, by a proceeding under sections 12 to 17, inclusive, of chapter 83 of the Code, it is necessary to comply substantially with all of the requirements thereof, and specifically with such of them as relate to jurisdiction of the property to be sold and persons interested therein. (p. 229).

2. SAME—*Infant Must Be Given Notice of Sale of His Realty Before Hearing.*

    In such a proceeding, it is essential that ten days notice be given to an infant whose land is to be sold, before the hearing on the petition, whatever his age may be. (p. 229).

3.  SAME—*Omission of Notice to Infant Before Hearing of Petition to Sell His Realty Renders Sale Voidable.*

But omission of such notice does not render the sale absolutely void. It is voidable only, and, if properly assailed in due time by the infant, it will fail, unless it was made under such conditions as would have justified it, upon regular procedure, and the purchaser, by proper procedure, procures judicial ratification thereof.   (p. 229).

4.  SAME—*Statutory Sale of Infant's Realty on Defective Procedure May be Judicially Ratified.*

Though the proceeding under said sections of chapter 83 of the Code is statutory and administrative and its requirements must be complied with, it is remedial and, properly construed, authorizes judicial ratification of a sale infirm and defective in point of procedure only.  (p. 229).

5.  SAME—*Sale of Infant's Realty May be Attacked by Original Bill.*

An infant may attack such a sale by an original bill, and is not limited to an appeal or a formal reopening of the cause in which the sale was ordered.  (p. 228).

(WILLIAMS, PRESIDENT, absent.)

Appeal from Circuit Court, McDowell County.

Bill in equity by Marion French and others against the Pocahontas Coal & Coke Company and others.  From a decree dismissing the bill, plaintiffs appeal.

*Reversed and remanded.*

*G. W. Howard* and *Geo. E. Price,* for appellants.

*A. W. Reynolds, D. J. F. Strother* and *Sale & Tucker,* for appellees.

POFFENBARGER, JUDGE:

This appeal is from a decree dismissing a bill in equity, having for its purpose annulment of a sale of real estate belonging to infants, made in a summary proceeding prosecuted under certain provisions of chapter 83 of the Code, for non-compliance with requirements of the statute.

The grounds of the attack upon the proceeding are lack of notice to the infants; failure of the petition to describe all of their real and personal property and set forth all the facts

necessary to show the propriety of the sale; adjudication and payment of a large part of the purchase money to alleged judgment-lien creditors, without inquiry as to the validity or propriety of the liens; and representation of the guardian in the proceeding by attorneys representing corporations adverse to the interests of the infants, at the same time, in other proceedings, one of which was the purchaser of the property in question.

An order made in the proceeding recites that notice had been given to all of the defendants or had been waived by them, but the notice given appears in the record and shows service thereof was accepted by an attorney professing to act for the infants who were all of very tender age. In his acceptance thereof he attempted to waive all further notice of the proceeding. A guardian *ad litem* was appointed for the infants. The attorney who accepted service of the notice was the brother-in-law and legal adviser of the guardian, the mother of the infants, and there is nothing in the record indicative of infidelity on his part to her or her children, or neglect of their interests. The proceeding seems to have been a merely formal one designed for consummation of a sale agreed upon in advance. The mother denies all knowledge or recollection of the proceedings, but admits her signature to the petition, and it appears to have been sworn to by her. She also signed a bond given, and a report made, in the proceeding. In the latter paper, she represented to the court that she had executed a deed conveying the property, agreeably to the sale she had been authorized to make, and received more than half of the purchase money, out of which she had discharged one of the judgment liens. There is nothing in the record conclusively showing the sale was unfair, unnecessary, unreasonable, or made for an inadequate price.

Defense was made to the bill in this cause principally upon the grounds of collateralness of the attack upon the proceeding and regularity and sufficiency of the proceeding. That the attack upon it is not collateral is clear. Two of the infants were still under age when the bill was filed. In such cases, neither an appeal in the cause nor a formal reopening thereof

in the court below is necessary. "An infant may show cause against a decree by bill, bill of review, supplemental bill in the nature of a bill of review, petition or answer." *Lafferty* v. *Lafferty,* 42 W. Va. 783; *Stewart* v. *Tennant,* 52 W. Va. 559. An infant's right to show cause against a decree affecting his interest is unhampered by any technical rules of procedure. The summary proceeding was defective in at least one aspect, lack of notice thereof to the infants. The proceeding is statutory and administrative. *Ammons* v. *Ammons,* 50 W. Va. 390; *Frantz* v. *Lester,* 82 W. Va. 328, 2 A. L. R. 1558. To effect a regular and unimpeachable sale, the requirements of the statute must be strictly complied with, and the courts cannot rightfully dispense with the requirements of notice to the infants. The statute specifically prescribes ten days notice to all persons interested before the hearing of the petition. It matters not that service of such notice upon a young child may be deemed a useless proceeding. Expediency of the requirement was a question for the Legislature and it has passed upon it. There are very few, if any, instances in which failure to give notice to infants or serve process upon them, in proceedings for the sale of their real estate, has been excused. We have been unable to find any. The universal holding seems to be that it is inexcusable. 14 R. C. L. p. 284, citing many cases. It is not excused nor cured by appointment of a guardian *ad litem* and defense made by him. *Clark* v. *Thompson,* 47 Ill. 25; *Martin* v. *Batley,* 87 Kan. 582; *Coleman* v. *Coleman,* 3 Dana (Ky.) 398; *Westmeyer* v. *Gallenkamp,* 154 Mo. 28.

This defect, however, renders the sale voidable only, if not ratified or validated, not absolutely void. *Frantz* v. *Lester,* 82 W. Va. 328, 2 A. L. R. 1558, following *Garland* v. *Loving,* 1 Rand. 396; *Goddin* v. *Vaughn's Ex'r,* 14 Gratt. 102; *Daniel* v. *Leitch,* 13 Gratt. 195; and *Faulkner* v. *Davis,* 18 Gratt. 651. Notwithstanding the character of the proceeding, it is remedial and the statute authorizing it is liberally construed. The sale is impeachable for defects in procedure, and the infant may overthrow it and set it aside, unless the purchaser can show the circumstances obtaining at the time of the sale, though not fully shown in the proceeding, were such as then justified the sale. If he can do so, the court may ratify and validate the de-

fective sale. As the court might have authorized the sale, when made, it might ratify and confirm what it could have ordered and attempted to order, but failed legally and validly to order, by reason of the mistake or oversight in procedure. Under a liberal interpretation of the statute, this authority is held to have been within the intention of the Legislature. "Under the statute, the court does not merely grant a general authority or power to the guardian to sell the real estate of the ward. It makes the sale itself through the guardian acting as its agent, or otherwise, and adopts adequate measures prescribed by the statute for preservation of the fund arising therefrom. The guardian seems to be vested with the sole power of initiation, but in all other respects the court is in full control of the proceeding. There is a cause of action whenever the interests of the ward require a sale." *Frantz* v. *Lester,* 82 W. Va. 328, 335; 2 A. L. R. 1558.

The dismissal of the bill in this cause is not the same in legal effect as a ratification of the sale, nor does it proceed upon the theory of ratification. It assumes, either that the sale could not be impeached upon this bill, or that it is regular and invulnerable. As it can be assailed by the bill and is impeachable and will fail unless it can be ratified, the decree is plainly wrong and will have to be reversed. But, in as much as we can see that the purchaser may be able to validate the sale by filing a cross-bill praying ratification thereof, and that the cause has not been sufficiently developed to enable the court to arrive at the ultimate right and justice thereof, no final decree ought to be entered here in the present state of the record. Under such circumstances, it is our practice to remand the cause, with leave to the parties to fully develop it. *Harrison* v. *Harman,* 85 W. Va. 538, 102 S. E. 224; *Wildell Lumber Co.* v. *Turk,* 75 W. Va. 26; *LaBelle Iron Works* v. *Savings Bank,* 74 W. Va. 569; *Cook* v *Lumber Co.,* 74 W. Va. 503.

The decree will be reversed and the cause remanded.

### ON REHEARING.

The argument submitted for the appellants, on the rehearing

allowed in view of the importance of the principle enunciated
in the foregoing opinion, although supported by a good many
precedents, is highly technical and wholly ignores and puts
out of view the equitable considerations underlying the in-
terpretation the court has put upon the statute under which
the sale was made. We are not at all convinced that the basis
of the Virginia decisions cited in the opinion has been mis-
apprehended. They treated the sales as having been previously
made without authority and sanctioned them, because they
were fair, reasonable and advantageous to the infants when
made, not merely so at the dates of the applications made to
the courts for ratification or confirmation thereof. They pro-
ceed upon the theory and interpretation announced in *Hughes*
v. *Johnson,* 12 Gratt. 479, in which Allen, President, speaking
for the court, said: "The propriety of the sale must be de-
termined by ascertaining the condition of the estate at the
time when the sale was made. If the sale was then necessary
under the facts then existing, and was fairly made for a full
price, it does not follow that mere irregularities in the pro-
ceedings, if any such occurred, would make it necessary to
set the same aside upon a final hearing." This doctrine was
reaffirmed in *Londons* v. *Echols,* 17 Gratt. 15. Jurisdiction
for correction of an error in such a sale was asserted by this
court in *Ammons* v. *Ammons,* 50 W. Va. 390. Judge BRANNON
no doubt had the general principles of these decisions in mind
and read them into the statute by way of interpretation, when
he said in *Fowler* v. *Lewis,* 36 W. Va. 112, 128: "Acts benefi-
cial to an infant, though unauthorized, are adopted and rati-
fied by the law." Sales beneficial to infants will not be set
aside on the ground of irregularities therein. *Cooper* v. *Hep-
burn,* 15 Gratt. 551, 569. The principle is discussed in *Brown*
v. *Armistead,* 6 Rand. 594.

The plain purpose of the enactment of the provisions for sales
of lands of infants, found in Chapter 83 of the Code, was to
clothe courts of equity with a jurisdiction they are held in most
of the states to have had inherently, namely, power to represent
and act for infants, under all circumstances affecting their
property rights, and to be in law and fact their guardians pos-

sessed of vastly greater authority than an ordinary guardian has. In those states, this authority is deemed to have been delegated to them by the state, occupying the status with reference to infants, accorded by the common law to the King of England, *parens patriae.* The argument is that the King vested that part of his authority in the equity courts of England, that our equity courts, at the dates of adoption of the American constitutions, already possessed such power and that they have not been divested of it. *Hine* v. *Morse,* 218 U. S. 493; note to *Heady* v. *Crouse,* 120 Am. St. 643, 654; *McCreary et al.* v. *Billing el al.,* Ann. Cas. 1915 A. 561. This is the doctrine of the courts of Alabama, Arkansas, Georgia, Illinois, Maryland, North Carolina, South Carolina and possibly Tennessee. It is denied in this state, Virginia, New York, Kentucky, Missouri and New Mexico. *Hoback* v. *Miller,* 44 W. Va. 635; *Pierce's Adm'r.* v. *Trigg's Heirs,* 10 Leigh 406; *Faulkner* v. *Davis,* 18 Gratt. 651; *Walker* v. *Smyser's Ex'rs.,* 80 Ky. 620; *Losey* v. *Stanley,* 174 N. Y. 560; *Kearney* v. *Vaughn,* 50 Mo. 284; *Bent* v. *Railway Co.,* 3 N. M. 158. Finding courts of equity without authority to make sales of the lands of infants, Virginia conferred it upon them by statute, because it was essential to the protection and advancement of their interests, as is held in those states in which the jurisdiction is asserted as one inherently possessed. The legislative purpose was to confer that jurisdiction as fully and completely as it is held and exercised in other states without statutory authorization. It is not merely a naked power. It is jurisdiction vested in a court of general jurisdiction. Hence, the statute conferring it ought to be interpreted broadly and liberally as it has been. In legal theory, the proceeding is always for the benefit of the infant, not adverse to him in any sense. The procedure prescribed by the statute is similar to that of general equity practice in such cases, and its purpose is to safeguard the interests of the infants as well as those of others concerned, but nothing in the statute declares that omission of any prescribed step shall render a sale utterly void. Compliance therewith is not necessarily jurisdictional. Whether it is or not depends upon the interpretation given the statute. The Virginia au-

thorities referred to here and in the original opinion prove that it is not and that non-compliance is a mere irregularity in procedure, affording ground of avoidance, unless the purchaser can show the sale was legally justifiable by the facts and circumstances obtaining at the date of the sale. *Kearney v. Vaughn,* 50 Mo. 284, holds that, if the court, in making such a sale, exceeds its powers under the law, its act is not a naked assumption of power, as might be the case if the tribunal had no jurisdiction. Here, the statute vests the jurisdiction and prescribes procedure. It does not merely confer a naked power upon some individual or administrative tribunal. It confers jurisdiction upon a court, in respect of a matter as to which, in the opinion of a majority of the courts of this country, it already had jurisdiction. 14 R. C. L. 267. A power of amendment or ratification is so necessary to equitable and just results in the exercise of authority to sell the real estate of infants, that it has been recognized and allowed in the case of a defective sale made by a guardian, not by a court. *Mock v. Chalstrom,* 121 Ia. 411.

The jurisdiction of the court is the same in a summary proceeding as in a suit. They differ only in procedure. The former was authorized to avoid expense and to simplify and expedite such sales. Its policy is the same as that of the statute authorizing judgments by motion upon notice.

*Reversed and remanded.*